

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 6, 2023

**BY ECF & EMAIL**

Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, N.Y. 10007

    Re:    *United States v. Hoa Duc Nguyen*, 07 Cr. 1121 (PAE)

Dear Judge Engelmayer:

    The defendant in this case, Hoa Duc Nguyen, is scheduled to appear before Your Honor on or about October 12, 2023, at which time the Government will consent to vacatur of the two 18 U.S.C. § 924(c) counts on which he was previously sentenced to five years' total imprisonment in light of the Supreme Court's decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022). The defendant will be resentenced on the remaining counts of conviction—conspiracy to participate in a racketeering enterprise; multiple counts of murder while engaged in a narcotics offense; conspiracy to participate in a racketeering enterprise; conspiracy to commit Hobbs Act robbery; Hobbs Act robbery; failure to appear; conspiracy to export stolen vehicles; exporting and attempting to export stolen vehicles; and transporting stolen vehicles in interstate and foreign commerce. The Government respectfully submits this letter in advance of the resentencing. For the reasons explained in this letter, the Government believes that a sentence of 300 months' imprisonment—that is, the sentence the defendant originally received—is sufficient, but not greater than necessary, to account for the factors set forth in Title 18, United States Code, Section 3553(a).

### I.    Offense Conduct and Criminal History

#### A.  Offense Conduct

    From at least 1987 through June 2003, the defendant was one of the leaders of a criminal enterprise known as the "Frank Ma Organization," a violent gang and drug trafficking organization that operated primarily in New York and California. For more than a decade the Organization—led by an individual named Frank Ma, who also eventually faced indictment and conviction for similar offenses—engaged in some of the most serious and violent criminal activity, including multiple murders, robberies, heroin trafficking, carjacking, and smuggling of stolen cars. After gaining the loyalty of Ma, the defendant became one of the most important individuals in the

Organization. As a result of this leadership, the defendant was directly involved in some of the Organization's most significant crimes. For example: the defendant was the leader of a prolific robbery crew that targeted bookies and brothel owners. Presentence Report ("PSR") ¶ 47. The defendant participated in, among other crimes, several murders for hire, many of which were completed at the direction of the defendant. PSR ¶ 51-54, 59-62. The defendant was also responsible for the transportation of heroin, PSR ¶ 63; armed carjackings, after which he would sell the stolen cars on the black market, PSR ¶ 64; the armed robbery of computer chip manufacturers, including at least one instance in which the defendant discharged a firearm at an innocent victim, PSR ¶ 65-66; and bail jumping, PSR ¶ 67. That pattern of violence culminated in March of 1992 when, after careful planning, the defendant murdered two members of a rival gang by shooting both in the head several times. PSR ¶ 49.

Most of the defendant's other murder victims were gang rivals, although one particularly egregious act of violence involved the defendant traveling with others to Toronto to murder a drug rival, but mistakenly shooting and killing two innocent victims. PSR ¶ 59-61. In total, the defendant was responsible for the murder of five victims, as well as the attempted murder of another. PSR ¶ 73. He stole almost $100,000 from various computer chip manufacturers. PSR ¶ 74. He stole countless vehicles undoubtedly worth in the hundreds of thousands of dollars. PSR ¶ 75.

In the course of being interviewed for the preparation of his original PSR, the defendant admitted to committing robbery, drug distribution, shootings, and multiple murders. PSR ¶ 86. There also appeared to be no dispute that the defendant was a supervisor in the Organization and reported directly to Ma. PSR ¶ 77.

**B. Indictments**

The defendant was charged in five separate indictments, all of which were eventually consolidated in the Southern District of New York. Indictment S9 03 CR 734-0l (DAB) (Indictment 1) was filed in the Southern District of New York on September 21, 2007. That indictment charged the defendant with racketeering conspiracy, including predicate acts involving murder, attempted murder, robbery, narcotics trafficking, and transport of stolen vehicles, in violation of 18 U.S.C. § 1962(d) (Count 1); and three counts of murder while engaged in conspiracy to distribute and import one kilogram and more of heroin, in violation of 21 U.S.C. § 848(e)(l)(A) and 18 U.S.C § 2 (Counts, 2, 3, and 4).

Indictment 07 CR 1112-0l (DAB) was originally filed in the Northern District of California on April 9, 1996, as 96 CR 94-18 (MHP) (Indictment 2). That indictment charged the defendant with RICO conspiracy relating to his armed robbery of several computer chip manufacturers, in violation of 18 U.S.C §§ 1962 and 1963.

Indictment 07 CR 1121-0l (DAB) was originally filed in the Northern District of California on February 6, 1996, as 95 CR 20075 (RMW) (Indictment 3). That indictment charged the defendant with conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count 1) and attempted Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count 2), as well as with the use of a firearm in connection with both the Hobbs Act robbery conspiracy and the attempted Hobbs Act robbery, in violation of 18 U.S.C. § 924(c) (Counts 3 and 4). Counts 3 and Four of

Indictment 3 are the Counts for which the defendant seeks (and the Government consents to) vacature.

Indictment 07 CR 1122-0l (DAB) was originally filed in the Northern District of California on January 7, 1997, as 97 CR 20002 (RMW) (Indictment 4). That indictment charged the defendant with bail jumping when he fled to China while on pretrial release, in violation of 18 U.S.C. § 3146.

Indictment 08 CR 088-0l (DAB) was originally filed in the Central District of California on November 19, 1997, as 97 CR 1126 (RMW) (Indictment 5). That indictment charged the defendant with conspiracy to export stolen vehicles in violation of 18 U.S.C. § 371 (Count 1), export of stolen vehicles in violation of 18 U.S.C. §§ 553(a)(l) and 2 (Count 2), and transport of stolen vehicles in violation of 18 U.S.C. §§ 2312 and 2 (Count 3).

C.  **Conviction and Sentencing**

On September 21, 2007, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, the defendant pled guilty to all four counts of Indictment 1. On February 26, 2008, the defendant pled guilty to all counts of Indictments 2, 3, 4, and 5. PSR ¶ 35.

After conducting appropriate grouping analysis, Probation calculated a combined adjusted offense level of 51. PSR ¶ 197. After subtracting three points for acceptance of responsibility, the defendant's total offense level was 48. PSR ¶ 201. The defendant was in criminal history category IV. PSR ¶ 216. With a criminal history category of IV and a total offense level of 48, the defendant's Guidelines range was life imprisonment. PSR ¶ 245.



Probation recommended a downward departure from the otherwise applicable life sentence called for by the Guidelines. *Id*. It recommended 25 years, or 300 months, imprisonment, noting that a "a lengthy sentence is nonetheless essential to meet the goals of justice, considering the violent and anti-social acts committed by this defendant." *Id*.

On February 21, 2012, the Honorable Deborah Batts followed Probation's recommendation and sentenced the defendant to 300 months' imprisonment. See ECF No. 6. Specifically, the defendant received a 240-month sentence on Counts One through Four of Indictment 1, Count Two of Indictment 2, and Counts One and Two of Indictment 3. The defendant was also sentenced to 60 months' imprisonment on Count One of Indictment 4 and Count One of Indictment 5, to be served concurrently with a 120-month sentence imposed on Counts Two and Three of Indictment 5 and the 240-month sentence imposed for convictions under Indictments 1, 2, and 3. Additionally, the defendant was sentenced to a 60-month consecutive term of imprisonment on Counts Three and Four of Indictment 3, for a total sentence of 300 months' imprisonment. *See id.*

Probation issued an updated PSR on August 10, 2023, in which it found that, even with vacatur of Counts 3 and 4 of Indictment 3, the defendant's applicable Guidelines range remains life imprisonment. Revised PSR, Dkt. 32 at 2.

## II. Discussion

### A. Applicable Law

The Guidelines still provide strong guidance to the Court in light of *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"—that "should be the starting point and the initial benchmark." *Gall v. United States*, 55 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7).

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within the Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that the district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita v. United States*, 551 U.S. 338, 348 (2007),

and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *Rita*, 551 U.S. at 349. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

**B. Discussion**

Though the Court must vacate the defendant's conviction on Counts Three and Four of Indictment 3 as a legal matter, that does not change what the defendant actually did, or the sentence that should be imposed. As the Supreme Court recognized in *United States v. Davis*, 139 S. Ct. 2319 (2019):

> defendants whose § 924(c) convictions are overturned by virtue of today's ruling will not even necessarily receive lighter sentences: As this Court has noted, when a defendant's § 924(c) conviction is invalidated, courts of appeals "routinely" vacate the defendant's entire sentence on all counts "so that the district court may increase the sentences for any remaining counts" if such an increase is warranted.

139 S. Ct. at 2336 (quoting *Dean v. United States*, 137 S. Ct. 1170, 1176 (2017)); *see also United States v. Gordils*, 117 F.3d 99, 104 (2d Cir. 1997) (plenary resentencing is warranted where conviction under Section 924(c) is vacated and convictions on other counts remain valid); *Rodriguez v. United States*, 116 F.3d 1002, 1004-05 (2d Cir. 1997) (same).

As noted above, the Guidelines sentence remains life imprisonment. For the reasons below, the Government believes that the defendant should again be sentenced to 300 months' imprisonment, or the original term imposed, which still represents a significant downward variance from the applicable Guidelines range.

**1. The Nature and Seriousness of the Offense, and the Need to Provide Just Punishment**

There is also no dispute that the defendant pled guilty to all his crimes without the benefit of a plea agreement. To reduce the defendant's sentence any further would contravene the Section 3553(a) factors and, particularly, the need for a sentence to reflect the seriousness of the offense; to promote respect for the law; and to provide just punishment for the offense.

To put it plainly: the defendant's crimes are as serious and heinous as can be. The 300-month sentence the defendant received was informed by his admitted commission of multiple murders, other robberies, carjackings, and several additional racketeering offenses. As noted in the PSR, the defendant, "either personally, or by directing others, carried out plethoric criminal

acts including multiple murders." PSR at 43. The impact of the defendant's crimes—in terms of lives lost, goods stolen, drugs transported, and other terror generally inflicted on those with whom he and his Organization interacted—practically rises to the level of immeasurable. As this Court noted in its recent order denying the defendant's request for compassionate release, the defendant's 300-month sentence was therefore "minimally necessary to respect the 3553(a) factors of just punishment, promotion of respect for the law, specific deterrence, and protection of the public." Dkt. 26 at 9.

Moreover, given the extraordinary break the defendant received at his original sentencing, it is extremely unlikely that the Court's imposition of a consecutive five-year term under Section 924(c) ultimately had any material impact on the defendant's total sentence, or that such an impact—in the event that it did exist—now requires that a lower term of imprisonment be imposed in order for justice to be properly served. It is instead clear from the sentencing transcript that Judge Batts' sentence was based on the totality of the circumstances, including the horrific nature of the defendant's crimes, the 3553(a) factors, ███████████████████████████████ *See* Def. Ex. M, February 21, 2012, Tr. at 12. There is simply no indication that Judge Batts would have sentenced the defendant differently had he not been found guilty of the two 924(c) counts.

At bottom, the defendant received a sentence substantially below his applicable Guidelines range of life imprisonment. There is no indication that the sentencing judge would have imposed a different sentence today, and any lower sentence would not adequately account for the need for the sentence to promote respect for the law and reflect the seriousness of the offense.

**2. The History and Characteristics of the Defendant**

In his letter supporting his request for a reduced sentence, the defendant relies on the same arguments he made in support of his December 16, 2022, motion for compassionate release: namely, that he has rehabilitated while in prison and that he has served a substantial portion of his original sentence. The Court should reject those arguments as bases for imposing a lower sentence, just as it did in its April 3, 2023, order denying First Step Act relief. Dkt. 26.

With respect to the defendant's rehabilitation: the Government again does not dispute that the defendant appears to have used most of time incarcerated positively and productively, including by taking various vocational classes and courses. But the Government agrees with this Court's earlier ruling that, "the productive steps Nguyen has taken, although exceeding those of many inmates, do not so depart from the norm as to qualify as extraordinary." Dkt. 26 at 6.

The Government understands that, more recently, the defendant appears to be suffering from a stomach condition. Dkt. 35 at 15. While the Government does not doubt that the defendant might have access to preferable medical care once he is released from custody, there is no indication from the defendant's medical records that the care he has been receiving over the past few months has been inadequate, or that he has been in untreated distress. Moreover, the cases the defendant cites in support of his argument involve inmates who suffered from arguably more serious medical conditions. *United States v. Simon* involved a 72-year-old inmate with HIV, chronic obstructive pulmonary disorder, hepatitis C, and prostate cancer. 482 F. Supp. 3d 151, 154 (S.D.N.Y. 2020). The defendant's conditions in *Simon* were so serious—and put him at such heightened risk of serious complications from COVID-19—that the medical unit of the facility

where he was housed petitioned the warden for a downward departure in sentence. *Id.* at 152. Similarly, in *United States v. Jasper*, 18 Cr. 390 (PAE), the Government did not oppose the defendant's request for early release, principally because her crimes (as reflected in her original 4-month sentence) were incomparably minor compared to those at issue here, and the defendant was at heightened risk of suffering serious complications from COVID-19 infection. 18 Cr. 390, Dkt. 441.

Similarly, with respect to the defendant's argument that he has served the majority of his sentence: although courts can consider length of time served as a factor supporting early release in some circumstances, they generally only do so when a defendant has "identified an independent basis for relief," such as extraordinary rehabilitation or terminal illness. Dkt. 26 at 8. Because no such independent basis exists here, the defendant's having served most of his term should not, in and of itself, provide a basis for a newly-reduced sentence.

### III. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose the defendant's original sentence of 300 months' imprisonment. This sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: _____
Jackie Delligatti
Assistant United States Attorney
(212) 637-2559

cc: Arlo Devlin-Brown, Esq. (via ECF)