NACsNGUs

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                          07 CR 1121 (PAE)

HOA DUC NGUYEN,

            Defendant.

------------------------------x

                                        New York, N.Y.
                                        October 12, 2023
                                        3:00 p.m.


Before:

                HON. PAUL A. ENGELMAYER,

                                        District Judge


                        APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  JACKIE DELLIGATTI
     Assistant United States Attorney

ARLO DEVLIN-BROWN
PATRICK MATTINA
     Attorneys for Defendant
```

NACsNGUs

```
 1                (Case called)

 2                THE DEPUTY CLERK:  Counsel, starting with the front

 3      table, please state your appearance for the record.

 4                MS. DELLIGATTI:  Good afternoon, your Honor.

 5                Jackie Delligatti for the government.

 6                THE COURT:  All right.  Good afternoon.  Thank you.

 7                MR. MATTINA:  Patrick Mattina for Mr. Nguyen and I'm

 8      joined here today by Arlo Devlin-Brown.

 9                THE COURT:  Very good.

10                Good afternoon, Mr. Mattina.

11                Good afternoon, Mr. Devlin-Brown.

12                And, of course, good afternoon to you, Mr. Nguyen.

13                Mr. Mattina, am I correct that your client's last name

14      is pronounced Nguyen?

15                MR. MATTINA:  I'm told it's pronounced Nguyen.

16                THE COURT:  I will try to be sensitive to that.

17                May I ask you, Mr. Mattina.  This is, of course, the

18      first proceeding I've had with Mr. Nguyen.

19                Does Mr. Nguyen speak English?

20                MR. MATTINA:  Yes, your Honor.

21                THE COURT:  Good afternoon, in any event, to you.

22                THE DEFENDANT:  Good afternoon to you, your Honor.

23                THE COURT:  Before we begin, first of all, I want to

24      thank defense counsel for taking on this representation, and

25      second of all, I need to make the following disclosure which is
```

NACsNGUs

```
1  known to the defense, but will not be known to the government,

2  which is to say that Mr. Devlin-Brown is a friend of mine.

3          He and I worked together for a number of years long

4  ago at the WilmerHale law firm, and I was very pleased to be a

5  reference for Mr. Devlin-Brown when he applied to be an AUSA,

6  and I consider myself still a friend and a mentor to him.  I

7  assume that does not in any way concern the government in terms

8  of the defense's service, or rather my service on the case, but

9  I wanted to put it on the record.

10         MS. DELLIGATTI:  No, your Honor.  Thank you.

11         THE COURT:  With that, we're here today to reimpose

12  sentence in the case of United States v. Hoa Duc Nguyen.  Some

13  background is necessary at the outset.

14         After entering guilty pleas in 2007 and 2008 to

15  numerous counts spanning five indictments, Mr. Nguyen, on

16  February 21, 2012, was sentenced by the Honorable Deborah Batts

17  to an overall sentence of 300 months' imprisonment.

18         Relevant here, as constructed by Judge Batts, the

19  sentence imposed was of 240 months on each of seven counts,

20  60 months on each of two counts, and 120 months on each of two

21  counts.  All of those to run concurrently with one another.

22         Additionally, as relevant here, Mr. Nguyen was

23  sentenced to a 60-month term of imprisonment on each of two

24  firearms counts on what the government calls, and which I will

25  call today, indictment number three.  And that 60-month term
```

NACsNGUs

was to run concurrently across the two firearms counts, but
consecutive to the 240-month sentence imposed collectively on
all the other counts.

The 300-month or 25-year sentence that Judge Batts
imposed reflected a very substantial downward departure
reflecting the defendant's substantial assistance.  Absent the;
downward departure, Mr. Nguyen's was having an offense level of
48 and a criminal history category IV, calling for a sentence
of life imprisonment.

But for the government's motion under Section 5K1.1 of
the guidelines and Section 3553(E) of Title 18, Mr. Nguyen
would have faced a mandatory life sentence on one count, Count
One of indictment one, and among other mandatory outcomes,
mandatory consecutive sentence on the two firearms counts from
indictment number three that I affected earlier.

Closer to the present, on December 16, 2022,
Mr. Nguyen filed a motion for compassionate release.  In a
decision issued April 3, 2023, this court -- which had been
reassigned the case following the untimely death of Judge
Batts -- denied the motion, finding no basis to reduce the
defendant's sentence.

However, in that same decision, the court did note
that in light of intervening case law, specifically the case of
*United States v. Taylor*, 142 S. Ct. 2015, the two firearms
counts in indictment number three which had been brought under

NACsNGUs

1    Title 18, United States Code, Section 924(c) were no longer

2    legally valid.

3          The court invited Mr. Nguyen to move to vacate those

4    counts and to pursue resentencing on the many surviving counts.

5    The court noted that because the basis for invalidating the two

6    firearm counts was a strictly technical one that had nothing

7    whatsoever to do with Mr. Nguyen, there was no assurance on

8    resentencing the court would not impose the same aggregate

9    sentence as before, just distributed differently among the

10   surviving counts.

11         The purpose of this proceeding in the first instance

12   is for the court to receive a motion to dismiss Counts Three

13   and Four of indictment number three in light of *Taylor*, and

14   then to proceed to resentencing.

15         So with that, government counsel, is there a motion to

16   dismiss those two firearms counts?

17         MS. DELLIGATTI:  Yes, your Honor.

18         The government moves to dismiss Counts Three and Four

19   of indictment three.

20         THE COURT:  OK.  Defense, I take it nothing to add to

21   that.

22         MR. MATTINA:  Correct, your Honor.

23         THE COURT:  That motion is granted.  I dismiss those

24   two counts in light of *Taylor*.

25         With that, are counsel now prepared to proceed to

NACsNGUs

1    sentencing?

2              MS. DELLIGATTI:  Yes, your Honor.

3              MR. MATTINA:  Yes, your Honor.

4              THE COURT:  All right.  So in anticipation that that

5    would be the case, I have reviewed a number of things.  I have

6    reviewed the case background before Judge Batts, including the

7    transcript of sentencing from 2012.  I've also reviewed the

8    original presentence report, I've reviewed the supplemental

9    presentence report prepared by the probation department and

10   filed on August 10 of this year.  It is docketed at docket 32.

11             I have also received the following additional

12   submissions:  First, the defense's sentencing submission which

13   is dated September 28, plus various attachments.  Among other

14   things, these include a letter from the defendant, other

15   letters in support of the defendant, and extracts of the

16   defendant's Bureau of Prisons sentencing records.  I've

17   reviewed the government's sentencing submission dated

18   October 6.  I have also recently received yesterday a letter

19   from the defense which helpfully gives the court a roadmap on

20   the premise that the court was inclined to reduce sentence and

21   to do so in a manner requested by the defense of a manner in

22   which the sentences might be imposed on the many surviving

23   counts to achieve that.

24             I thank you for that.  I hadn't expected that

25   submission, but certainly understand why, were the court

NACsNGUs

1  inclined to go in that direction, such a letter would have been

2  of assistance or would be of assistance.

3          Have the parties received each of these submissions?

4          MS. DELLIGATTI:  Yes, your Honor.

5          MR. MATTINA:  Yes.

6          THE COURT:  And has anything else been submitted in

7  connection with this sentencing?

8          MS. DELLIGATTI:  Not from the government, your Honor.

9          THE COURT:  Same two answers?

10          MR. MATTINA:  No, your Honor.

11          THE COURT:  Very good.

12          Mr. Mattina, have you read the presentence report and

13  the supplemental presentence report?

14          MR. MATTINA:  I have, your Honor.

15          THE COURT:  And have you discussed them with your

16  client?

17          MR. MATTINA:  I have, your Honor.

18          THE COURT:  Mr. Nguyen, I know you had reviewed the

19  original presentence report back in the day.

20          Have you reviewed the supplemental presentence report?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  OK.  Have you discussed these with your

23  lawyers?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Could you kindly move the microphone

NACsNGUs

1    closer to you.

2                Thank you.

3                Have you had the opportunity to go over with your

4    lawyers any errors in the supplemental report or anything else

5    that should be taken up with the court?

6                THE DEFENDANT:  Yes, your Honor.

7                THE COURT:  Ms. Delligatti, have you reviewed the

8    supplemental presentence report?

9                MS. DELLIGATTI:  I have, your Honor.

10               THE COURT:  All right.  Putting aside the calculation

11   of the sentencing guidelines, does anybody, beginning with the

12   government, have any objections to the report regarding its

13   factual accuracy?

14               MS. DELLIGATTI:  No, your Honor.

15               MR. MATTINA:  No, your Honor.

16               THE COURT:  All right.  Then hearing no objections, I

17   will adopt the factual recitations set forth in the original

18   presentence report and in the supplemental presentence report.

19   The supplemental presentence report will be made a part of the

20   record in this matter.  It will be placed under seal.  In the

21   event an appeal is taken, counsel on appeal may have access to

22   the sealed report without further application to this court.

23               Counsel, I assume the parties' sentencing submissions

24   should be filed under seal given the references to the --

25               MR. MATTINA:  Yes, your Honor.

NACsNGUs

1          THE COURT:  -- to Section 5K1 and the like.

2          MS. DELLIGATTI:  Your Honor, the government redacted

3     the portions of its letter that pertain to Mr. Nguyen's

4     cooperation, so I think it would be perfectly appropriate to

5     leave the redacted version --

6          THE COURT:  That's fine.

7          MS. DELLIGATTI:  -- on the docket as it is.

8          THE COURT:  I'm happy for your submission as redacted

9     then to be filed on the public docket.

10          Mr. Mattina, given the centrality of that topic to

11     your letter.  I authorize you to simply file your report under

12     seal in its entirety.

13          MR. MATTINA:  Your Honor, we have already filed

14     redacted versions on ECF.

15          THE COURT:  On the other hand, that's fine, too.

16          Very good.  Thank you.

17          All right.  Turning to the sentencing guidelines, the

18     court is no longer required to follow the sentencing

19     guidelines, but I am required to consider the applicable

20     guidelines in imposing sentence.  To do so, it's necessary that

21     the court accurately calculate the guidelines sentencing range.

22          In this case, there being a cooperation agreement, the

23     parties' plea agreement did not contain the stipulation as to

24     how the sentencing guidelines apply.  Nonetheless, it appears

25     that the parties now agree with the probation department as to

NACsNGUs

how the guidelines prior to a downward departure apply.  The

probation department calculates an offense level of 43, a

criminal history category of IV, yielding a predeparture

guideline range of life imprisonment.

          Do the parties agree with that calculation?

          MS. DELLIGATTI:  Yes, your Honor.

          MR. MATTINA:  Yes, your Honor.

          THE COURT:  All right.  Then based on the parties'

present agreement and the absence of objection, my independent

evaluation, I accept the guideline calculation in the

presentence report.

          The next subject I need to cover is departures, which

is to say within the guidelines framework.

          Ms. Delligatti, is the government, much as it did in

2012, today moving for a downward departure under Section 5K1.1

and relief for such mandatory minimum sentences as remain

pursuant to Section 3553(E)?

          MS. DELLIGATTI:  It is, your Honor, on the same

grounds on which it moved at Mr. Nguyen's original sentencing.

          THE COURT:  Very good.  I grant that motion.

          A downward departure and a substantial one remains

very much warranted in this case as it was at the original

sentencing, and for the same reasons, I intend to depart

downward today.

          All right.  Having taken care of those necessary

NACsNGUs

1    preliminaries, does the government wish to be heard with

2    respect to sentencing?

3              MS. DELLIGATTI:  Yes, your Honor.

4              Just briefly.  I'll summarize what the government's

5    position in its letter is.  Of course, as your Honor is aware,

6    what the government thinks is the appropriate sentence today is

7    the same sentence that Judge Batts imposed many years ago, so

8    that would be 300 months, I think technically to be imposed on

9    the seven remaining counts for which Mr. Nguyen was sentenced

10   to 240 months' imprisonment originally.

11             Your Honor --

12             THE COURT:  You said seven.

13             MS. DELLIGATTI:  I think there were seven of those

14   counts, your Honor.

15             THE COURT:  I don't think so.  I thought my

16   tabulation --

17             MS. DELLIGATTI:  One, two, three, four, five, six,

18   seven.

19             THE COURT:  My calculation is that there were 11

20   counts, including the ones in California.

21             MS. DELLIGATTI:  I think it was Counts One through

22   Four of indictment one, your Honor; Count Two of indictment

23   two; Counts One and Two of indictment three.

24             THE COURT:  Sorry.  Take a look at the supplemental

25   presentence report, and it picks up the presentence report, the

NACsNGUs

1    original one.  And on the second page of the original

2    presentence report under penalties, it lists under offenses, it

3    lists 13 counts of which two have now gone away.

4              I see defense counsel lightly nodding.  Mr. Mattina,

5    are you in agreement that there are 11 surviving counts?

6              MR. MATTINA:  I am, your Honor.

7              THE COURT:  Ms. Delligatti, I think this is really

8    purely going to be a matter of counts and allegation.  I think,

9    as a formal matter, I do need to impose sentence on 11 counts.

10             MS. DELLIGATTI:  That's right, your Honor.  There are

11   11 surviving counts.

12             I think a couple of those counts, Mr. Nguyen was

13   originally sentenced to a lower term of imprisonment to 120

14   months' imprisonment.  But I think as a practical matter, your

15   Honor, resentencing on all 11 of those counts -- or 13, your

16   Honor, excuse me --

17             THE COURT:  There were 13.  Two are gone.

18             MS. DELLIGATTI:  So 11.

19             THE COURT:  Yes.

20             MS. DELLIGATTI:  The government suggests would be

21   appropriate.

22             THE COURT:  And you would recommend that that be

23   constructed in any particular way?

24             MS. DELLIGATTI:  I think, your Honor, the government

25   would recommend it to be constructed similarly to what defense

NACsNGUs

1    counsel recommended, but without the downward departure today.

2              So Counts One through Four of indictment one, Count

3    Two of indictment two; Counts One and Two of indictment three;

4    so the government's proposal would be that the sentence imposed

5    on those counts be 300 months.

6              THE COURT:  Right, right.

7              In other words, to get there, as I understand it --

8    one moment.  I'm just calling up the presentence report.

9              There appears to be only one count --

10             I see.  In other words, the Counts One through Four of

11   indictment one authorize a term of up to life imprisonment and,

12   therefore, definitionally authorize a term of 25 years'

13   imprisonment.

14             MS. DELLIGATTI:  That's right, your Honor.  Yes.

15             And so with respect --

16             THE COURT:  And everything else would simply be the

17   statutory maximum all to run concurrently.

18             MS. DELLIGATTI:  Exactly, your Honor.  Yes.

19             THE COURT:  OK.  Go ahead.

20             MS. DELLIGATTI:  So, your Honor, the only other thing

21   I would highlight for the court is that I think it's clear from

22   our letter, the government does not dispute that the defendant

23   has, of course, served a majority of his sentence.  The

24   government does not dispute that over the course of the time

25   the defendant has been in custody, he has shown some

NACsNGUs

1    rehabilitation.

2             But the principal question for these proceedings, your

3    Honor, is whether the Section 3553(a) factors ought to be

4    balanced differently and whether some sort of disruption of

5    that balance now overriding the sentence that Judge Batts

6    originally imposed.

7             That might be the case, your Honor, in resentencing

8    proceedings where it's clear that the defendant was given more

9    time because of the convictions that are now vacated or in

10   resentencing proceedings where the guidelines are, in fact,

11   different and lower now when the court is considering the

12   defendant's convictions without the vacated convictions, your

13   Honor.

14            But here, as your Honor noted, the guidelines remain

15   unchanged.  They remain life imprisonment, and as your Honor

16   also noted, Mr. Nguyen received a huge break from the life

17   sentence that the guidelines recommended in his original

18   sentence in large part because of the same factors the defense

19   or the court were to consider today.

20            So the fact of the matter, your Honor, is that this is

21   not a case in which the circumstances have so changed, such

22   that a reduction in sentence or a reassessment of the 3553(a)

23   factors is warranted by the court.  The government I think

24   agrees, your Honor, that the most compelling reason for

25   reducing a sentence here is a mere fact that the defendant has

NACsNGUs

1    served the vast majority of his sentence.  But all the

2    government would submit on that point, your Honor, is that that

3    is not a principled reason in and of itself to reduce a

4    sentence when considering the 3553(a) factors in balance.

5          The original sentence was more than appropriate.  It

6    was incredibly lenient.  The government agreed with probation's

7    recommendation, of course, in its 5K submission that the court

8    should downwardly depart in that sentence, but there is no

9    reason to reduce it any further now, your Honor.

10         THE COURT:  It's an oddity, isn't it, that Judge Batts

11   made the firearms counts consecutive, right?

12         I mean, she would have had to do so had there not been

13   cooperation and the 3553(e) motion.  But with the benefit of

14   that motion, there was no obligation to run those two counts

15   consecutive.  She could have easily achieved the 25-year

16   sentence, among other things, on the first four counts of

17   indictment one.

18         Granted she doesn't say anything suggesting that of

19   all things the firearms counts made a difference to her insofar

20   as there were five people murdered.  It is an oddity that she

21   chose to do that.

22         MS. DELLIGATTI:  Your Honor, candidly, I apologize.

23         I don't know the answer to the question of whether she

24   had some liberty not to run those counts consecutively.  I

25   certainly take your Honor's credit, your Honor.

NACsNGUs

1          THE COURT:  No.  The reason why I say that is this is

2    a familiar phenomenon before me --

3          MS. DELLIGATTI:  Sure.

4          THE COURT:  -- where the motion that's made under

5    Section 5K1.1, that affords relief from the guideline range.

6          MS. DELLIGATTI:  Also affords relief.

7          THE COURT:  From either mandatory consecutive or

8    mandatory sentences.

9          MS. DELLIGATTI:  Correct.

10          THE COURT:  So it seems to me that among many, many

11   options, she had to get to 300 months or a number that wouldn't

12   have assigned any unique value to the firearms offenses, which

13   at least gives rise a little bit to the thought 2expoundment of

14   is it possible that for some reason she attached some

15   significance to them.

16          Countervailing that is common sense, which is that

17   there were five people whom this man killed.  The use of the

18   firearm, as opposed to any other weapon in connection with

19   that, is hard to see why that would add logical time to the

20   balance.  But it is an oddity.

21          MS. DELLIGATTI:  I think that's right, your Honor.  I

22   think I would agree that I think, given the nature of the

23   crime, it's not surprising that there was some separate

24   sentence carved out for the use of firearms.  I don't

25   necessarily think that when you look at the sentencing

NACsNGUs

transcript as a whole, it suggests that Judge Batts would have

imposed a different sentence had there not been the two

firearms counts, especially considering the difference between

the sentence she did impose on the other counts which carried a

much higher guideline sentence.

THE COURT:  Right.  I suppose the other --

Just a moment.  I suppose the other relevant point is

that even if there was a reason to think that she thought the

firearms offense materially influenced the just overall

sentence, the facts underlying the dismissed counts remain the

same.  It's purely the legal technicality of how the

categorical rule applies to them.

So even if we indulge that Judge Batts found the

presence of a firearm to be a big deal and amid all the other

crimes here, the fact of the substance of those crimes having

been committed remains the same.  It's merely a technical

change this law.

MS. DELLIGATTI:  I think that's right, your Honor,

which is, of course, why the Second Circuit and other circuits

have found quite easily that a court is, of course, perfectly

entitled to impose the same sentence when looking at the same

underlying factual record, even considering the vacated counts.

THE COURT:  OK.  All right.  Thank you.

Anything further from the government?

MS. DELLIGATTI:  No, your Honor.  Thank you.

NACsNGUs

1          THE COURT:  Mr. Mattina, I take it you'll be taking

2    lead.

3          MR. MATTINA:  Yes, your Honor.

4          THE COURT:  Go ahead.

5          MR. MATTINA:  Your Honor, we're here today to make

6    what we believe to be a reasonable and modest request that

7    Mr. Nguyen be sentenced to time served with five years of

8    supervised release.  Mr. Nguyen's projected to be released in

9    July 2024, so essentially we're asking for a nine-month

10   reduction in his original sentence.

11         What we want to focus on today is what's changed since

12   2012, since Mr. Nguyen was originally sentenced.  We want to

13   focus on three changes.  The first is Mr. Nguyen's health, the

14   second is his rehabilitation, and the third is the time he

15   spent in prison during the COVID-19 pandemic.

16         THE COURT:  Sorry.  On that one --

17         MR. MATTINA:  Yes.

18         THE COURT:  -- I would have been open to that

19   argument, but not on your papers.  I'm not going to consider it

20   being raised now.  It's simple too late.

21         MR. MATTINA:  I believe we do make reference to it in

22   our submission.  If I could have a moment.

23         THE COURT:  Tell me where it is.

24         MR. MINEAR:  Your Honor, it's on page 11 at the very

25   bottom.

NACsNGUs

1          THE COURT:  Yes.

2          MR. MATTINA:  It carries on to page 12.

3          THE COURT:  That literally doesn't cut it.  This is

4     the entire of it.

5          Mr. Nguyen was imprisoned for the determination of the

6     COVID-19 pandemic, and then it quotes language that I cited in

7     a different case involving the price exacted there.  But there

8     is not word one in the papers here about Mr. Nguyen's

9     experience in COVID-19.  I will tell you that as I have

10     released many defendants based on representations of the asthma

11     that they had or why the pandemic was affecting themselves

12     medically or threatened to do so, I've released prisoners based

13     on a factual showing that they were in crowded municipal

14     facilities where there is a heightened risk of getting

15     COVID-19, but there is literally not one word about

16     Mr. Nguyen's experience with COVID-19.  He didn't say anything

17     about that in the compassionate release motion.

18          And the memo here doesn't say anything about what the

19     conditions were like at Lompoc, whether he had some medical

20     condition, whether he even got COVID-19.  So with respect,

21     COVID-19 is not an automatic get-out-of-jail-early card.  It

22     requires some degree of factual substantiation.  It's way too

23     late for that at the oral part of the sentencing hearing where

24     all that is stated is that his time in Lompoc coincided with

25     COVID-19.  I have to take that off the table.  Had you made

NACsNGUs

1   that argument, I would have been interested, and the government

2   would have had an opportunity to respond.  There might have

3   been some factual portrait of what the experience was like.

4           Sorry about that, but, I mean...

5           MR. MATTINA:  That's fine, your Honor.  If I can --

6           THE COURT:  I'm sorry.

7           MR. MATTINA:  We do say at the end of that sentence,

8   that was obviously not contemplated at the time of Judge batts'

9   original sentence.

10          THE COURT:  And --

11          MR. MATTINA:  I'm sorry, your Honor.

12          THE COURT:  -- it is correct that it wasn't

13  contemplated.  The problem is that there is literally nothing

14  that you've given me that tells me what it was like for him.

15  In the MCC here, it was a horror show.  In some of the FCIs,

16  there were dreadful experiences.  There were experiences for

17  people who had underlying respiratory risks.

18          And then there were situations where the factual

19  submissions that I was getting in, for example, the service of

20  compassionate release motions simply did not make out prison

21  conditions that were so far off the mark as to be that

22  consequential.  I just don't know what the facts are here.

23          MR. MATTINA:  Understood, your Honor.

24          If I may.  We were going to expound upon Mr. Nguyen's

25  services, Mr. Nguyen's, during oral argument.  I understand

NACsNGUs

1    you're saying we missed the boat, so to speak.

2         THE COURT:  As a matter of basic evidentiary fairness,

3    you would be making a factual proffer to me about what his

4    experience has been like under COVID.  Under those

5    circumstances, the government's really in no position to be

6    able to respond.  I mean, it was surprising to me, to be honest

7    with you, that COVID was absent either from his application for

8    compassionate release or having been alerted by the nature of

9    my denial of that motion, not to say something about it with

10   factual backup here.

11        But it was the dog that didn't bark in the defense

12   submission here.  It has worked for many but not all

13   defendants.  But I took the defense sentencing submission to be

14   saying that there is nothing that distinguishes him from any

15   prisoner in the United States who happened to be in prison, you

16   know, beginning and going forward from March of 2020.

17        Sorry to say that, but...

18        MR. MATTINA:  But that was not the intention.  I

19   understand your Honor's point.

20        THE COURT:  Good.

21        MR. MATTINA:  So I'll move on to -- I'll focus on the

22   two points that I was originally going to speak about.

23        THE COURT:  Yes.

24        MR. MATTINA:  The first change is Mr. Nguyen's health.

25   As the medical records reflect, over the past year or so he's

NACsNGUs

1   been suffering from stomach issues, and the best way to

2   describe it to the court is that these are flareups or

3   episodes, so to speak.  When they happen, he has quite severe

4   abdominal pain.  He can't hold food down.  He can't sleep.  He

5   becomes weak and he vomits for days in a row.

6           Mr. Nguyen has not received a diagnosis, and we don't

7   want to speculate as to what is causing his symptoms, but...

8           THE COURT:  Tell me why he hasn't had a diagnosis.

9           MR. MATTINA:  Your Honor, he has asked for treatment,

10  from what we can tell from the record --

11          THE COURT:  Has or has not?

12          MR. MATTINA:  Has made requests for treatment.

13          From what we can tell from the records, the extent to

14  which that request has been met is that he's been ordered, sent

15  for an X-ray of his abdomen, and also given laxatives.  That is

16  what we can tell from the records.

17          We don't want to speculate as to what is causing these

18  issues, but his family and friends have written to the court to

19  express their concerns.

20          THE COURT:  Let me ask you this question.  He ought to

21  get adequate treatment to get to the bottom of what's happening

22  here, but that's a familiar situation that this court

23  experiences with defendants who don't happen to be before me

24  for a technical resentencing.  And counsel will, for example,

25  ask the court to issue an order that effectively directs the

NACsNGUs

Bureau of Prisons to furnish medical care sometimes relating to
eyesight, sometimes relating to diabetes, or other things.

I am happy to do that and stand ready to do that.
While there are some limits to what I can make the executive
branch do, that is an order I feel completely comfortable
issuing.  And although I have no experience with Lompoc, I can
tell you that the prisons that have tended to receive those
orders have tended to respond to them with some dispatch.

Why isn't the more limited remedy for you to get me an
order, which I'll be delighted to issue tomorrow, that directs
the facility to step up its game in terms of his treatment?

MR. MATTINA:  Because, your Honor, we are concerned
that the Bureau of Prisons just isn't able to treat him
properly.  And I think the government admits in their letter to
the court that, of course, Mr. Nguyen would receive more
favorable care if he was a free man.

THE COURT:  Look, the problem is we're at the stage we
don't even have a diagnosis.  So to talk about the treatment is
putting the cart ahead of the horse.  We don't know yet what
the diagnosis is, and that would be in the spirit of what he
needs.  But to say he should get out of jail when we haven't
even tried, for example, the lesser restrictive alternative of
the court's directing the Bureau of Prisons to get its act
together and get him a diagnosis, seems to me skipping a step.

MR. MATTINA:  Your Honor, our view is that the failure

NACsNGUs

1    to diagnose is the inadequate care and, you know, it's not our

2    fault that we're putting the cart before the horse, so to

3    speak.  If they would adequately diagnose, we wouldn't have

4    to --

5                   THE COURT:  I appreciate that.

6                   Look, I appreciate from where the defense in this case

7    stands, you have not been assigned to represent Mr. Nguyen for

8    a long period of time.  And from the moment you took on the

9    representation, there was effectively a resentencing not long

10   on the horizon.

11                  The problem may simply be that Mr. Nguyen, until the

12   accident of the combination of *Taylor* and then the opinion

13   denying compassionate release identifying the *Taylor* problem

14   with two of his convictions, he didn't have any lawyer to shake

15   the trees for him and to get a judge to write Lompoc to say, by

16   order, get this treatment, get this diagnosed.  But where we

17   are now is that that remains an available option.

18                  And it seems to me -- tell me why it's unreasonable to

19   proceed this way -- for you to get me an order that is tailored

20   to the draft order that is tailored to his needs to get him a

21   diagnosis and fast, and if it turns out that Lompoc is blowing

22   that off, you then have, albeit in the form of a compassionate

23   release motion, something to work with.

24                  But without having explored that option, candidly, the

25   fact that he is vomiting and his stomach hurts doesn't seem to

NACsNGUs

1    me to be a basis to release, to shorten the sentence that Judge

2    Batts imposed.

3              MR. MATTINA:  Understood.

4              THE COURT:  Look, if you are having some pushback on

5    it, I'm happy to hear it.  Better for me to tell you what I'm

6    thinking about that and give you a chance.

7              MR. MATTINA:  Absolutely, your Honor.  Understood.

8    And we want to focus today on what's changed since 2012, and

9    that's one of the things that has changed since 2012.  And I

10   understand your Honor is not going to entertain my third thing

11   that's changed since 2012, but I would like to move on to the

12   second, if that's OK.

13             THE COURT:  Yes.

14             MR. MATTINA:  The second thing that's changed is

15   Mr. Nguyen himself.  Over the last 20 years, he has shown

16   remorse and taken steps to become a better man.  And actions

17   speak louder than words, and I don't want to misquote the

18   government.  But from what I heard today, they are singing a

19   different tune than they were in response to his motion for

20   compassionate release.

21             In that motion, they say they certainly commend

22   Mr. Nguyen for his clear efforts to make productive use of his

23   time in prison.  I don't think that was the tone and tenor of

24   what you heard this afternoon about those rehabilitative steps.

25   At the time of his original sentencing, it was unknown what

NACsNGUs

1   Mr. Nguyen would do with his time in prison.  We now know.  We

2   have an answer.  This is a man whose taken steps to improve

3   himself.  I mean, he's gotten his GED.  He has become English

4   proficient.  He's taken courses in computer education, culinary

5   arts, nutrition.  He's taken Spanish lessons and taken up

6   welding.  He's also taught fellow prisoners Chinese.

7          These are all voluntary steps that he's taken, not

8   been ordered of him.  Whether those steps are extraordinary, as

9   the government says, they are not in their motion, that's not

10  relevant for today's purposes whether it's extraordinary.

11         You know, the letters in support for Mr. Nguyen's

12  family and friends add credibility to his actions.  They have

13  noticed the steps he's taken and extremely grateful for all of

14  their support.  But, your Honor, that didn't happen by

15  accident.  That's because of the steps he's taken.  I would ask

16  the court to please take that into consideration.

17         Skipping over my point on the pandemic conditions,

18  that's what's changed since Mr. Nguyen was first sentenced, and

19  we submit that when you look at those changes, when you look at

20  his age, he's 57.  When you look at the substantial assistance

21  that he provided to the government to take down the Frank Ma

22  organization, which was a violent mafia.  That is what it was.

23         We struggle to see how it benefits anyone, either the

24  public or Mr. Nguyen, to keep him in prison for nine more

25  months, when this court has the ability to release a man who

NACsNGUs

1    has taken steps to better himself, has shown remorse to the

2    victims, and has health issues.  We struggle to see why we have

3    to go through all the steps your Honor went through earlier to

4    make applications for him to get medical treatment.

5          Your Honor can do that right now.  He can get the best

6    care in the world if he's released today.  And so, you know, we

7    ask you to please take that into account.

8          And Mr. Nguyen would like to address the court if

9    that's OK.

10          THE COURT:  OK.  What's the plan for him after he's

11    released, whether it's now or nine and a half months from now?

12          MR. MATTINA:  Your Honor, he has family and friends in

13    California.  He has a place to live with a relative of his.  He

14    has a job in California just outside of Oakland at a

15    construction company.  I was quite amazed.  I have been dealing

16    with a good friend of his for 30 years, and I told him the

17    court is going to ask me this very question.  I'm going to have

18    to have an answer as to what you're going to do with your time.

19    That's his plan, and we have a letter in support from the

20    employer saying he is --

21          THE COURT:  Which I read with interest.

22          MR. MATTINA:  Yes.

23          And I have the address of where he would live in

24    Oakland.

25          THE COURT:  All right.  Thank you.

NACsNGUs

1      Thank you to you and for the rest of your team for

2    taking on the representation at short notice and very

3    effectively.

4           MR. DEVLIN-BROWN:  Your Honor, would it be possible if

5    I just add a thing or two, or no?

6           THE COURT:  Of course.

7           Just speak into the microphone.

8           MR. DEVLIN-BROWN:  Certainly, your Honor.

9           So, on the health order issue, I really do think

10   that's two tracks, because for one thing under 3553(a), right,

11   and we're sentencing him as he is today, a court can, of

12   course, consider the person's health in deciding the length of

13   their sentence.

14          So I think it's sort of relevant as the man he is

15   today, not the man he was when he was sentenced before.

16          THE COURT:  You're talking now about the stomach?

17          MR. DEVLIN-BROWN:  The stomach, principally the

18   stomach.

19          In terms of getting an order, I do think that is a

20   separate track, and obviously if your Honor sentences him to

21   the original sentence, that's something we would pursue.  I

22   think the complication there is we don't know if he's going to

23   be at the MDC, how much longer he will be given the release

24   date, or where he's going to be sent.

25          THE COURT:  By the end of the proceeding you'll at

NACsNGUs

1    least know what the remaining length of the sentence is, and

2    I'm happy to issue an order and tailor it as more information

3    comes in.  The real issue is you're absolutely right that I can

4    take into account, and should, his current medical condition as

5    it relates to his stomach.  The problem is that, as described

6    to me, it may be a big deal and it may be not such a big deal

7    at all.  It may be a matter of changed diet or a laxative or a

8    prescription or something.  I just don't know.  I'm not a

9    medical doctor.

10          But in the absence of demonstrated proof that this is

11   a big deal, to cite the stomach pain as he has as a reason to

12   lop nine and a half months off the effective sentence that

13   Judge Batts imposed, with a lot of information in her hand,

14   does not seem to me to be right.  Seems to me that I'm sorry

15   he's having stomach pain.  I'm sorry he's throwing up.

16          He killed five people and the judge sentenced, set a

17   sentence factoring all that into account.  Stomach pain without

18   a diagnosis of it as being, you know, durable, grave, a very

19   big deal seems to me unpersuasive.

20          MR. DEVLIN-BROWN:  With respect to, your Honor, I

21   don't think that is what the record, even the existing record,

22   reflects as to his stomach pain.  There it reports in there,

23   which are not contradicted, that he cannot eat for days and

24   days at a time because he throws everything up.  I think a

25   colonoscopy is probably what -- I'm not a doctor either --

NACsNGUs

1   probably the logical next step.  I don't know that that is

2   possible in the Bureau of Prisons and, of course, your Honor --

3           THE COURT:  I can assure you that whether it's within

4   the Bureau of Prisons or through one of the providers with whom

5   they have a medical contract, things much more esoteric than

6   colonoscopies get ordered.

7           I've had difficult valve replacements.  I've had stuff

8   like that.  So it's available.  It's just a matter of getting

9   him here, and he's very blessed to have a law firm that will

10  now champion him as to that.  To the extent it's not clear, I

11  absolutely encourage your continued retention to follow up on

12  that issue.

13          MR. DEVLIN-BROWN:  Certainly, your Honor.

14          And then the other thing, I'll be brief, I just do

15  think it's important that we make a record of what your Honor

16  has ruled that you're not going to consider, because the

17  government hasn't had a chance to respond, but just so that

18  record is clear, our submission on COVID is not specific to

19  him.  It's not that he had any unusual trouble.  It's simply

20  that I don't know that there is any facility in this country --

21  I don't know if the government would disagree -- where in those

22  first months of COVID, Bureau of Prisons locked everyone down.

23  They had limited ability to see or no ability to see anyone

24  outside, and that is not the sort of thing that was

25  contemplated at the time of the sentence.

NACsNGUs

1          Does that mean someone should not have a very serious

2    sentence still, given what the crimes are?  Of course it

3    doesn't.  I think it is a factor, and with respect, that that

4    at least should be considered.

5          THE COURT:  Fair enough.  The record is made.  Thank

6    you.

7          All right.  One moment.

8          (Pause)

9          Mr. Nguyen, do you wish to make a statement?

10         THE DEFENDANT:  Yes, your Honor.

11         First of all, I would like to say that --

12         THE COURT:  Little closer to the microphone, sir.

13         THE DEFENDANT:  I would like to thank God and I would

14    like to thank the government for giving me a second chance in

15    life.  And I would like to take this time to say sorry to the

16    victims' family.  And I know -- sorry to the family of the

17    victims for all the pain and grief that I've caused them, and I

18    just want to say sorry to the government for all of my crime.

19    And I do take full responsibility for my action.

20         And that's all, your Honor.  Thank you.

21         THE COURT:  All right.  Thank you, Mr. Nguyen.

22         I'm going to take a moment just to collect my

23    thoughts.

24         (Pause)

25         I should is ask you, Ms. Delligatti, the nature of the

NACsNGUs

1    crimes here is such that, at the original sentencing anyway,

2    victims would have had the opportunity to participate?

3             It's been decades.  I don't know whether there are

4    family members of any of the victims here who expressed an

5    interest then or expressed an interest now in participating.

6    I'm not sure how that works on a resentencing under these

7    technical circumstances, but I ought to raise the question with

8    you.

9             MS. DELLIGATTI:  Your Honor, my understanding is that

10   our office, in particular the victim witness coordinator, did

11   make some effort to reach out to the victims and didn't receive

12   a response from any of them.

13            THE COURT:  All right.  Thank you.

14            This will be several minutes.

15            (Pause)

16            Is there any reason why sentence should not now be

17   imposed?

18            MS. DELLIGATTI:  No, your Honor.

19            MR. MATTINA:  No, your Honor.

20            THE COURT:  All right.  As I stated, the guideline

21   range that applies to this case is life imprisonment.  However,

22   the government has moved for a downward departure and relief

23   from the mandatory minimum sentences on certain counts of

24   conviction.  And for the reasons given by Judge Batts, such

25   relief is clearly warranted.

NACsNGUs

1          Under the Supreme Court's decision in *Booker* and the

2     cases that have followed, the guideline range, even after

3     taking into account a downward departure to reflect the

4     defendant's substantial assistance, a court is still -- the

5     guideline range is still only one factor that a court must

6     consider in deciding the just and appropriate sentence.

7          The court must also consider the other factors set

8     forth in the sentencing statute Title 18, United States Code,

9     Section 3553(a).  These include the nature and circumstances of

10    the offense and the history and characteristics of the

11    defendant, the need for the sentence imposed to reflect the

12    seriousness of the offense, to promote respect for the law, and

13    to provide just punishment, the need for the sentence imposed

14    to afford adequate deterrence to criminal conduct, the need for

15    the sentence imposed to protect the public from further crimes

16    of the defendant, and the need for the sentence imposed to

17    provide the defendant with needed educational or vocational

18    training, medical care, or other correctional treatment in the

19    most effective manner.

20         The court is also required to impose a sentence

21    sufficient but no greater than necessary to comply, all in,

22    with the purposes that I've just summarized.  And here, I find

23    that the sentence I'm about to pronounce is sufficient but not

24    greater than necessary to satisfy the purposes of sentencing

25    that I've just reviewed.

NACsNGUs

1          Today's resentencing presents something of an unusual

2     situation.  I was not the original sentencing judge.  A long

3     time has passed since the offenses of conviction, which largely

4     occurred in and around the early 1990s.  A long time has passed

5     since Mr. Nguyen's arrest, which I understand to have been in

6     May of 2003.  A long time has passed since the original

7     sentencing.  I'm now in my 13th year on the bench.  Mr. Nguyen

8     was arrested more than 20 years ago.  At the time that Judge

9     Batts sentenced Mr. Nguyen, I had been on the bench for four

10    and a half months.

11         I've done my best to familiarize myself with the

12    history and underlying factors of the case.  I've read the

13    original presentence report.  I've read the transcript of the

14    original sentencing proceeding.  I've read the materials

15    submitted in connection with Mr. Nguyen's compassionate release

16    motion, and I've read counsel's thoughtful recent submissions

17    plus attachments submitted in advance of today's sentencing.

18         I've given thought methodologically as to how to

19    approach the sentencing question today.  My judgment on how to

20    proceed is as follows:  I'm going to treat the sentence imposed

21    by Judge Batts as reflecting as of the date of the original

22    sentencing, the proper balance of the 3553(a) factors,

23    including credit for Mr. Nguyen's cooperation.

24         Now, I appreciate that counsel's recent letters have

25    revisited those questions.  The defense's letter emphasizing

NACsNGUs

1   the significant value of Mr. Nguyen's cooperation, the

2   government's letter emphasizes the terrible gravity and number

3   of his offenses, which include multiple murders, five to be

4   precise, two of innocent bystanders and a sixth attempted

5   murder, shootings, robberies, a great deal of violence, drug

6   dealing, thefts of cars, and threats from computer chip

7   manufacturers.

8            Judge Batts' sentencing remarks stated that she had

9   assessed all of these factors.  Although she did not explain in

10  detail how she reached this result, she arrived at the

11  conclusion that a 25-year overall sentence struck the right

12  balance.  She was known to me, and to the bar, as a thoughtful,

13  deliberate jurist, who sweated the details and was

14  characteristically always solicitous of the defense.

15           My judgment is to accept Judge Batts' thoughtful

16  assessment as correct based on the information known as of

17  February 21, 2012, the date of the original sentencing.  I

18  will then examine what to me is the critical question today on

19  resentencing, which is what has happened since then, how if at

20  all do those post-sentencing developments bear on the 3553(a)

21  factors, and do any of those developments support modifying

22  that sentence.

23           Before turning to that question, I will also say this

24  for the benefit of the defense.  Had I chosen a different

25  methodology today in which I reassessed for myself how the

NACsNGUs

3553(a) factors and Mr. Nguyen's cooperation balanced out as of
February 21, 2012, that would not have been to Mr. Nguyen's
benefit.  I'm absolutely certain that I would not have imposed
an overall sentence below 25 years based on the information
known at the time.  I say that with the benefit of having, by
now, presided over many cases alas involving murders and
violence and having sentenced many cooperators in those cases.

From that experience, I have a pretty good sense how I
would have viewed the just sentence, were I sitting where Judge
Batts sat in February 2012.  The gravity and scale and
viciousness of the violence and murders here, in particular,
would have weighed heavily with me.  I would have viewed the
need for just punishment in particular as immense.  It is
possible that I would have come up with the exact same sentence
as Judge Batts did.  It's also possible that I would not have
rewarded Mr. Nguyen for his cooperation quite as generously as
did Judge Batts.

As best that I can put myself in her shoes, I might
well have imposed a higher sentence potentially one as high as
five years higher, which is to say a sentence of 30 years'
imprisonment.  So in deciding to accept the balance struck by
the always thoughtful Judge Batts, I am making a methodological
call that, to the extent it benefits either party, it benefits
the defense.

Again, it may be that, would I have imposed the same

NACsNGUs

1    sentence, all I know, I wouldn't have imposed a lower one.

2              So what subsequent developments might occasion a

3    reassessment?

4              One possibility might have been hardship in prison due

5    to the unexpected development that was COVID-19.  That has been

6    the basis for many reductions of sentence.  During the peak of

7    the pandemic, I ordered the early release of at least a couple

8    of dozen prisoners, and I've imposed lower sentences in scores

9    of cases based on unexpectedly arduous conditions of

10   presentence custody, whether due to the pandemic or the

11   horrific conditions of local prisons.

12             Mr. Nguyen has not meaningfully made that argument,

13   although alone substantiated it.  It was not made at all in

14   pro se compassionate release motion, and it was only lightly

15   touched upon in his counsel's advocacy on resentencing.

16   Specifically the only reference to COVID-19 was a generic

17   single-sentence reference to the fact that Mr. Nguyen's prison

18   term overlapped with the pandemic.  But the defense submission

19   is devoid of any factual detail on that point whether about

20   Mr. Nguyen's medical or physical conditions or experience or

21   journey or concretely how COVID-19 affected his experience at

22   Lompoc.  It may or may not be that a factually distinct

23   narrative could have been developed specific to Mr. Nguyen and

24   his journey during COVID-19, but I am unprepared to reduce the

25   sentence of a defendant, let alone the considered sentence of a

NACsNGUs

serial murderer based on the bear incantation of the two words
COVID and 19.  COVID-19, or harsh prison conditions, are not
factually available as a basis to deviating from Judge Batts'
sentence.

Next, Mr. Nguyen describes himself as suffering or
apparently suffering from a stomach condition.  I say
"apparently" because I don't know what the actual underlying
condition is.  I credit that he is having the symptoms that he
describes.  It has caused, he reports, significant weight loss
and vomiting.  I'm quite sympathetic to that situation.

But on the present record, it falls short of
justifying a reduction of sentence.  The course of the stomach
condition is, as yet, undiagnosed.  It may or may not prove to
be a big deal.  The Bureau of Prisons in my experience is
capable of securing medical diagnoses and care sufficient to
diagnose and likely treat Mr. Nguyen's condition.  On the
present record, there is no reason to believe that the BOP will
be unable to diagnosis and treat that condition, particularly
if ordered to do so, as this court stands ready to do.

The decisions of mine that the defense cites that have
reduced sentences on account of a medical condition have
involved much more dire situations.  Those decisions, like
*United States v. Simon*, typically were issued during the peak
of the pandemic, before vaccinations were available, while
people across the country, including in this city, were dying

NACsNGUs

of COVID-19 in droves.  And they involved defendants with

demonstrated medical conditions, such as obstructive pulmonary

disorder or asthma, for which COVID-19 could easily cause

death.

Mr. Nguyen is, as yet, not in any such demonstrable

situation.  He does have in common with many of the defendants

whom I released during that period that he had served a

significant majority of that sentence, but he has not

established the companion factor in those cases, which is that

he has a medical condition, in those cases one contraindication

vis-a-vis COVID-19 warranting early release.

The defense next cites ways in which Mr. Nguyen has

attempted, while in prison, to rehabilitate.  He obtained a

GED, became proficient in English, and has taken courses in

Spanish, computer education, culinary arts, and welding.  Those

actions are, of course, all to the good.  Mr. Nguyen has

amassed very few disciplinary infractions, just one since July

2019, none sounding in violence since November 2008, which

given his violent past, has to be viewed as progress.

Nonetheless, I cannot say that these facts are

meaningfully out of the ordinary.  I considered these facts at

the time of Mr. Nguyen's application for compassionate release.

I found that they did not rise to the level of extraordinary so

as to qualify him for such relief.

Now, the standard is different at a resentencing

NACsNGUs

proceeding.  The issue is not whether these actions are

extraordinary and compelling, but whether they caused the court

to weight 3553(a) factors or factor meaningfully differently

than at the time of the original sentencing.  My assessment is

no.  The court expects defendants to take advantage of basic

resources offered at the BOP, and Mr. Nguyen as a cooperating

witness presented himself at sentencing as having mended his

ways and his intent on reflection and reform.

          I cannot in good conscience say that the courses

Mr. Nguyen has taken and his relatively good disciplinary

report would have materially changed the sentencing calculus.

For what it is worth, I doubt that Judge Batts, had she known

in February 2012 that Mr. Nguyen was destined to take the

courses he had and amassed the disciplinary record that he has,

would have regarded those factors, though commendable, as

terribly consequential in the context of the very grand

considerations that dominated in either direction her

sentencing assessment.

          In the same vain, I have read the letters from

Mr. Nguyen and from his family and friends.

          These include his friend, Joanna Lam, who describes

his stomach pains.

          His son Justin, who has not seen him in 27 years, but

spoken to him.  He writes a few times over the phone and

reports that Mr. Nguyen is "nothing but remorseful."

NACsNGUs

1        His lifelong friend, Lloyd Tran, who describes

2    Mr. Nguyen as kind and gentle.

3        His friend, Muoi Liu, who values Mr. Nguyen's

4    friendship, honesty, and generosity.

5        His friend, Terri Cao, who says that Mr. Nguyen has

6    "changed his ways," and says that he and Mr. Nguyen will always

7    be there for each other.

8        His friend, Khanh Trinh, who says that Mr. Nguyen has

9    shown remorse and has a loving and supportive family.

10       His longtime family friend, Thuy Walburg Dizon, who

11   says that Mr. Nguyen "deeply, deeply regrets his unfortunate

12   incident," and that his family loves and needs him.

13       And JC Tran, a manager of a building company, who says

14   he wants to give Mr. Nguyen a construction job upon his

15   release.

16       It is, indeed, encouraging to read these letters.

17   These letters, they tell me that Mr. Nguyen will have a real

18   support network upon his release from custody.  Candidly,

19   though, these letters are a piece or of a piece are the

20   positive character letters that the court is familiar with and

21   receives at sentencing.  I do not dispute the sincerity of any

22   of them.  None of them say anything concrete about Mr. Nguyen's

23   rehabilitation, about the past 20 plus years in prison, let

24   alone anything that stamps it as out of the ordinary.

25       The defense's final point is that Mr. Nguyen's release

NACsNGUs

1    date is close.  His release date is, continuing good behavior,

2    is under a year away.  I understand it presently to be

3    tabulated at July 26, 2024, which is some nine and a half

4    months away.  I appreciate the temptation to say, what's nine

5    and a half more months measured against 20-plus years already

6    served?  What's the big deal?

7         But at the end of the day, an application for a change

8    of a considered sentence has to be based on a change in law or

9    a change in fact.  Rigorous analysis, not sympathy, has to

10   govern the court's decision.

11        Close enough is good enough is not a persuasive

12   argument at resentencing.  The change in law here that has

13   occasioned the resentencing has zero bearing on the just and

14   reasonable sentence.  It involves the entirely technical

15   application of the categorical rule governing Section 924(c) as

16   applied to the offense of attempt to commit Hobbs Act robbery.

17   It doesn't change any facts of Mr. Nguyen's offense conduct.

18   And for the reasons I've stated, the material facts haven't, in

19   my assessment, changed either.

20        If Judge Batts were presiding here today, I venture

21   that she would have said there is nothing I'm hearing about

22   today that is materially different from what, at the time of

23   the sentencing, I would have expected to have heard about

24   Mr. Nguyen some 20 years into the service of his sentence.

25        The bottom line is this:  With regret, but with

NACsNGUs

1    firmness, I am simply unpersuaded there is a basis to alter the

2    sentence imposed by Judge Batts.  This will, therefore be, one

3    of the those many sentencings, resentencings brought about by

4    developments in Section 924(c) case law that results in the

5    same aggregate sentence being imposed as before, with the terms

6    of imprisonment allocated to different offenses of conviction

7    rearranged, to yield the same aggregate sentence as before.

8             I commend defense counsel for the energy and vigor of

9    your arguments on Mr. Nguyen's behalf and for jumping in with

10   both feet to this representation.  The facts, it appears, just

11   weren't there.  But I find overall the sentence as originally

12   imposed, in its aggregate anyway, the lowest that can satisfy

13   the 3553(a) factors considered as a whole.

14            I'm now going to state the sentence I intend to

15   impose.  The attorneys will have a final opportunity to make

16   legal objections before the sentence is finally imposed.

17            Mr. Nguyen, would you please rise.  And, counsel,

18   because part of what I'm about to do is reallocate, I'm going

19   to go slowly, I'm going to ask everyone to check my math and to

20   check to make sure that what I'm saying with respect to the

21   many counts that are out there is faithful to the statutory

22   maximums that exists for each count.

23            Mr. Nguyen, after assessing the particular facts of

24   this case and the factors under Section 3553(a), including the

25   sentencing guidelines and including Section 5K1.1, it's the

NACsNGUs

1    judgment of the court that you are to serve an aggregate

2    sentence of 300 months' imprisonment in the custody of the

3    Bureau of Prisons, to be followed by a period of five years'

4    supervised release.

5          As to particular counts, I impose a term of

6    300 months' imprisonment on Counts One through Four of

7    indictment one.  I impose a term of 240 months' imprisonment

8    on Count Two of indictment two and Counts One and Two of

9    indictment three.  I impose a 60-month sentence on Count One of

10   indictment four and Count One of indictment five.  I impose a

11   120-month sentence on Counts Two and 33 of indictment five.

12   All of these sentences are to run concurrently with one

13   another.

14         As to supervised release, I impose a five-year term of

15   supervised release on Counts One through Four of indictment

16   one, and a three-year term of supervised release on all the

17   other counts.  These terms are to run concurrently with one

18   another.

19         Before I turn to the terms of supervised release, let

20   me just pause for a moment and make sure that what I have just

21   proposed to impose as the sentence is faithful to the statutory

22   maximums for each count.

23         MS. DELLIGATTI:  That's correct, your Honor, given the

24   20-year statutory maximum for indictments two and three.

25         THE COURT:  OK.  Defense?

NACsNGUs

1          MR. MATTINA:  Yes, your Honor.

2          THE COURT:  All right.  As to supervised release, it

3    is my intention to impose the identical terms of supervised

4    release as imposed by Judge Batts.

5          Just one moment.

6          The one term that was imposed by Judge Batts that she

7    singled out at the sentencing, I'll read what she wrote is:

8    The defendant shall be tested periodically at the direction of

9    the Department of Probation for substance abuse, and should he

10   test positive, he shall participate in a substance abuse

11   prevention program, to be residential or nonresidential, as

12   directed by the Department of Probation.

13         But it is my intention to impose all the mandatory

14   conditions of supervised release and standard conditions of

15   supervised release that are set out in the presentence report.

16         Let me ask you, Mr. Mattina, insofar as your client

17   was present for the original sentencing and has read the

18   judgment, is there any need for me to recite those out loud, or

19   may I incorporate those by reference?

20         MR. MATTINA:  That's unnecessary, your Honor.

21         THE COURT:  All right.  I'm not going to impose a

22   fine.  I am persuaded Mr. Nguyen does not have the ability to

23   pay one.

24         Government counsel, was there either a forfeiture or

25   restitution order the first time around?

NACsNGUs

| | |
|---|---|
| 1 | MS. DELLIGATTI:  Your Honor, I don't believe there |
| 2 | was.  I checked before the proceeding, and I couldn't find any |
| 3 | record of it. |
| 4 | THE COURT:  I did not either. |
| 5 | MS. DELLIGATTI:  Yes. |
| 6 | THE COURT:  Defense counsel, do you have anything |
| 7 | different to share? |
| 8 | MR. MATTINA:  No. |
| 9 | THE COURT:  Then I will not impose forfeiture or |
| 10 | restitution. |
| 11 | Now, there is the matter of the special assessment, |
| 12 | and I could use your help here.  Judge Batts, on the 13 counts, |
| 13 | imposed an aggregate special assessment of $950.  Were I |
| 14 | imposing sentence today, I would have fewer counts, 11 counts, |
| 15 | but I think all 11 of them would require a $100 special |
| 16 | assessment, which would actually increase the special |
| 17 | assessment.  That has the field of substantial ex post facto, |
| 18 | and I do not intend to do there. |
| 19 | Government counsel, understanding that the court is |
| 20 | not going to raise the special assessment from before, and I |
| 21 | do need to do this on a count-by-count basis, do you have an |
| 22 | understanding of what the special assessment was that ran with |
| 23 | the two firearms counts the first time around? |
| 24 | MS. DELLIGATTI:  Your Honor, I'm sorry.  Candidly, I |
| 25 | don't. |

NACsNGUs

1    THE COURT:  Counsel, here is what I would like to do.

2    Under no circumstances am I going to impose a special

3    assessment that exceeds $950.  I am prepared to reduce the

4    special assessment by the amount that would have been in place

5    in February 2012 for the two firearms counts.  I just don't

6    know what that math is.  It is likely that each of those counts

7    either occasioned a 50 or $100 special assessment.  But without

8    knowing the answer, I don't want to guess at it, and I don't

9    want to get that wrong.

10   What I would propose to do is give counsel until

11   Monday to confer with each other.  This is going to take a

12   little bit of archeology and figuring out what the special

13   assessments were for those counts, and get me a proposed letter

14   that guides me as to the relevant special assessment.

15   My intention is to deduct from $950 the amount of the

16   authorized special assessment for the two 924(c) violations as

17   of February 2012.

18   Defense, do you have any objection to my proceeding on

19   that point in that manner?

20   MR. MATTINA:  No, your Honor.

21   THE COURT:  Government?

22   MS. DELLIGATTI:  No, your Honor.

23   And I apologize for not knowing the answer today, but

24   someone from our office who was here in 2012 will know.

25   THE COURT:  Yes.  No apology necessary.  I should have

NACsNGUs

1    caught it as well.  I came in here, frankly, having not focused

2    on that nuance, and now that I am, I have to get it right.

3         All right.  In any event, subject to that one detail

4    that remains to be supplied, but where I've given you the

5    formula that I will use to supply the detail, does either

6    counsel know of any legal reason why this sentence shall not be

7    imposed as stated, government?

8         MS. DELLIGATTI:  No, your Honor.

9         THE COURT:  Defense?

10        MR. MATTINA:  No your Honor.

11        THE COURT:  The sentence, as stated, is imposed.

12        Ms. Delligatti, I take it while I usually ask if there

13   are any open counts, if there had been any, they would have

14   been disposed of by Judge Batts, correct?

15        MS. DELLIGATTI:  That's right, your Honor.

16        THE COURT:  All right.  Mr. Nguyen, I need to advise

17   you, again, of your appellate rights.

18        To the extent you haven't given up your right to

19   appeal your conviction and your sentence through your plea of

20   guilty, your plea of guilty of long ago and the plea agreement

21   or agreements you entered into with the government long ago,

22   you have the right to appeal the actions taken today,

23   specifically the denial of the application for reduced

24   sentence.

25        If you're unable to pay for the cost of an appeal, you

NACsNGUs

may apply for leave to appeal *in forma pauperis*.  The notice of

appeal must be filed within 14 days of the judgment of

conviction, meaning the judgment that I will issue, and I

expect that that judgment will issue early next week after I

get guidance from counsel about the special assessment.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  All right.  Let me ask defense counsel,

insofar as I am generating a new judgment, that is a forum in

which I can put in requests to the Bureau of Prisons.  There is

one obvious one that is staring all of us in the face which

involves the stomach condition, but there may be others based

on Mr. Nguyen's experience.  I'm delighted to include in the

judgment such guidance as you would want me to give the Bureau

of Prisons.

Do you want to take a moment and confer with each

other and with Mr. Nguyen as to recommendations you would like

me to make to the Bureau of Prisons contained in the judgment?

That may also have the value of expediting, perhaps,

any request, any court order, the effect of any court order

relating to the stomach issue.

MR. DEVLIN-BROWN:  Yes, your Honor.

If it's OK with the court, given that the judgment is

probably not going to issue until at least Monday, if we could

have until Monday, perhaps, to put in a letter, because I think

NACsNGUs

```
 1   we're thinking both of the stomach issue as well as any
 2   requests for where he serves the sentence.
 3           THE COURT:  Good thinking.
 4           MR. DEVLIN-BROWN:  That might be.
 5           THE COURT:  Good thinking.
 6           Ms. Delligatti, under the circumstances the government
 7   has no dog in this hunt and that to the extent that the defense
 8   may request a different facility, I expect the defense will
 9   give me some form of words to use with respect the medical
10   condition.  Realistically, you're not going to have an
11   objection, I take it, to my incorporating to the defense's
12   recommendation.
13           If there is something that I find objectionable, I
14   know what to do with it.  I don't expect there to be.  I take
15   it I can proceed without seeking your feedback on this.
16           MS. DELLIGATTI:  That's right, your Honor.  Yes.
17           THE COURT:  Very good.
18           Why don't we say by the end of Monday, get me any
19   proposed language.  If there is anything that requires any
20   explanation, just put it in the letter.  I would be happy to
21   make that recommendation.  Look, particularly with respect to
22   the stomach ailment, I'm delighted to editorialize a little bit
23   to get their attention.
24           Lately, I've been doing that by putting in bold face,
25   not MDC, for example, in judgments that I'm happy to find a way
```

NACsNGUs

1   to drive the point home with respect to the stomach ailment.

2          Because, Mr. Nguyen, you deserve better than a prison

3   system that doesn't diagnose --

4          THE DEFENDANT:  Thank you, your Honor.

5          THE COURT:  -- a repeated condition.  And while

6   resentencing to my mind isn't the right response to that, there

7   is a right response, and it's getting the Bureau of Prisons'

8   act together.  So I welcome counsel to come up with something

9   muscular that I can say.

10          Beyond that, defense counsel, although your

11   appointment was for the limited purpose of the resentencing

12   proceeding, I will treat the care of Mr. Nguyen's stomach

13   condition as subsumed in that assignment, and I will hope that

14   you'll stay on in representing him for the purpose of lighting

15   a fire under the behinds of the Bureau of Prisons to attend to

16   his medical needs.

17          Can I have your assurance you'll do that?

18          MR. DEVLIN-BROWN:  We will, your Honor.

19          THE COURT:  Anything else from the government?

20          MS. DELLIGATTI:  No, your Honor.  Thank you.

21          THE COURT:  Anything else from the defense?

22          MR. MATTINA:  No, your Honor.

23          THE COURT:  Mr. Nguyen, I'm almost certain I will

24   never see you again.  I'm also certain you'll never see me

25   again.  I want to wish you the very best.  You have had --

NACsNGUs

1        THE DEFENDANT:  Thank you, your Honor.

2        THE COURT:  -- an unusual journey, to say the least.

3   But I must say this.  The letters I received about you from

4   your friends and family, including people who haven't seen you

5   in more than two decades, show that you left those people with

6   a deep reservoir of affection.  That says something very

7   positive about you.

8        You're in your late 50s.

9        THE DEFENDANT:  Yes, sir.

10        THE COURT:  50 how old?

11        THE DEFENDANT:  57 now, your Honor.

12        THE COURT:  Trust me.  You're still young.  And even

13   by the calculations I've been given, you'll be out in under a

14   year.  You've got a long way to go on this journey.  And I hope

15   that you will be guided by the very positive views that your

16   friends and family have of you and use the rest of your time on

17   this earth to live up to their view of you.  It's obvious

18   you've got something to offer, and I challenge you to do that.

19        I wish you the very, very best.

20        THE DEFENDANT:  Thank you, your Honor.

21        THE COURT:  Thank you.

22        We stand adjourned.

23                          *   *   *

24

25